IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-58-1 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING DEFENDANT ERIC LANG'S MOTION TO SUPPRESS PRETRIAL IDENTIFICATION** |
| ERIC LANG, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Eric Lang's Motion to Suppress Pretrial Identification (Doc. 58).[1] The Government opposes the motion (Doc. 67). The Court conducted an evidentiary hearing on June 1, 2021. For the reasons set forth below, the motion will be **DENIED**.

I. BACKGROUND

A. Facts

Around 11:30 p.m. on January 10, 2020, multiple assailants robbed W.R. at gunpoint in Hawaiian Terrace, a large multi-family residential community in Cincinnati, Ohio. They stole his Mercedes and shot W.R. several times, including in the legs and head.

In the early morning hours of January 11, 2020, W.R. told law enforcement officers that "Lava" had "set up" the carjacking. W.R. stated that he had been incarcerated with "Lava" previously at Lebanon Correction Institution and had run into "Lava" at a convenience store

---

[1] In his motion, Lang also requested production of the victim's medical records to the extent they are relevant to the victim's ability to recall the events of the carjacking. The perpetrators shot W.R. (the victim) several times during the carjacking, including in the head. The Government has provided W.R.'s medical records to defense counsel subject to a Protective Order. (Doc. 72.) Thus, Lang's request for production of discovery is now moot.

shortly before the shooting. They chatted briefly and exchanged telephone numbers so they could meet later.

Law enforcement officers obtained a photograph from the Ohio Department of Rehabilitation and Corrections of a formerly incarcerated person, suspect 1, nicknamed "Lava." However, when shown suspect 1's photo, W.R. identified suspect 1 as "Big Lava" rather than "Little Lava" with whom he had interacted on January 10, 2021. W.R. further indicated that "Little Lava" and "Big Lava" were brothers.

Based on this new information, officers obtained a photo of suspect 1's biological brother, suspect 2. However, when officers learned that suspect 2 had been incarcerated on January 10, 2021 on unrelated charges, they dismissed him as a suspect.

In the meantime, law enforcement obtained the security video footage from the convenience store at which W.R. and "Lava" had run into each other. From that footage, they isolated an image of "Lava" and the Ford Explorer he drove to the convenience store. The image was included in a bulletin disseminated to other law enforcement officers.

Other officers indicated that the security image resembled Eric Lang, a person known to them. On January 16, 2020, officers located the vehicle from the convenience store outside Lang's residence. They spoke with Lang who admitted being at the convenience store the evening of January 10, 2020. Lang further admitted being in Hawaiian Terrace during the time of the carjacking, but he stated he was only there to meet a young woman whose name he no longer recalled.

Officers then obtained two additional photographs of Eric Lang, one from the Bureau of Motor Vehicles and one from the Ohio Department of Rehabilitation and Corrections.

Cincinnati Police Detective Tracy Jones testified that he showed W.R. Lang's driver's license photo on January 17, 2020, and asked him, "Who is this?" W.R. responded, "That's Lava."

W.R. further explained that "Lava" called to arrange a meeting within ten minutes of arriving home from the convenience store. W.R. drove to the agreed location in Hawaiian Terrace and backed into a parking spot. "Lava," now identified as Eric Lang, pulled his Ford Explorer in front of W.R.'s vehicle, blocking its exit. "Lava" exited the Explorer and stood near the two vehicles. Three other people then approached W.R. on foot, ordered him to exit his Mercedes and lay on the ground. Someone other than "Lava" entered W.R.'s Mercedes, and the perpetrators drove away, shooting the still-prone W.R. as they fled.

### B. Procedural Posture

A grand jury indicted Defendant Eric Lang and his Co-Defendant Garry Holmes on charges of carjacking, in violation of 18 U.S.C. §§ 2119 and 2119(2) (Count one) and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count two). The grand jury also charged Holmes with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count three).

Lang moves to suppress W.R.'s pretrial identification of him and any in-court identification of him as the carjacker. (Doc. 58.) Lang contends the single photo identification resulted from unreliable, unduly suggestive identification procedures and violated his constitutional right to Due Process. The Government opposes Lang's motion. (Doc. 67.)

## II. APPLICABLE LEGAL STANDARD

Generally, "[t]he Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as

unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). However, studies of post-conviction DNA exonerations identify mistaken eyewitness identification as a leading cause of wrongful conviction. Emily West & Vanessa Meterko, *Innocence Project: DNA Exonerations, 1989-2014: Rev. of Data and Findings from the First 25 Years*, 79 Alb. L.Rev. 717, 732–34 (2015-2016) (finding eyewitness misidentification present in 72 percent of DNA exoneration cases analyzed). Thus, while statutes and rules ordinarily govern the admissibility of evidence, due process concerns require exclusion of "eyewitness identification obtained through police-arranged procedures that 'made it all but inevitable that [the witness] would identify [the defendant].'" *Perry*, 565 U.S. at 238 (quoting *Foster v. California*, 394 U.S. 440, 443 (1969) (alteration in original)).

To suppress eyewitness identification evidence, then, a defendant "must show that the process was 'both suggestive and unnecessary' so as to give rise to a 'substantial likelihood of misidentification.'" *United States v. Felix*, No. 20-3201, 2021 WL 1102304, *3 (6th Cir. Mar. 23, 2021) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012)). If the defendant demonstrates such unnecessary suggestiveness, "a court must then consider the totality of the circumstances surrounding the identification to evaluate its reliability." *Id.* (citing *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005). Pursuant to this two-step inquiry, courts should suppress tainted identifications where "the indicators of a witness' ability to make an accurate identification are outweighed by the corrupting effect of law enforcement suggestion." *Ojile v. Smith*, 779 F.App'x 288, 293 (6th Cir. 2019) (quoting *Perry*, 565 U.S. at 239).

The Supreme Court identified the following factors for assessing an eyewitness identification's reliability: (1) the witness' opportunity to observe the perpetrator at the time of the crime; (2) the witness' level of attention; (3) the accuracy of the witness' prior description;

(4) the witness' level of certainty; and (5) the time between the crime and the identification. *Id.* at 294 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114–16 (1977)); *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). "'Although identifications arising from single-photograph displays may be viewed in general with suspicion,' the total circumstances may nevertheless negate the 'corrupting effect of the suggestive identification,' particularly where the witness knows the defendant." *United States v. Simmons*, 633 F.App'x 316, 320–21 (6th Cir. 2015) (quoting *Manson*, 432 U.S. at 114, 116).

### III. ANALYSIS

In the case at bar, the identification procedure employed was not so suggestive as to give rise to substantial likelihood of misidentification. W.R. knew the perpetrator from their previous incarceration, and he identified the perpetrator as "Lava" immediately after the carjacking and before he had viewed any photographs. Importantly, W.R. summarily rejected the first photograph shown to him and explained the difference between "Big Lava" and "Little Lava" before ultimately identifying Eric Lang as the "Lava" present at the carjacking.

In addition, even if the single photo identification had been unduly suggestive, the totality of the circumstances supports a finding of reliability. W.R. engaged in friendly personal interactions with Lang in a well-lit convenient store approximately one hour before the shooting. Lang telephoned W.R. to explain where and when to meet, and W.R. observed Lang and his Ford Explorer at the scene before the situation became stressful. In addition, W.R. remained certain at all times that "Lava," now known to be Lang, set up the carjacking.

Because the Court finds neither improper suggestiveness nor unreliability here, W.R.'s identification of Lang must not be suppressed. Lang may test the identification at trial via

traditional means designed for that purpose, including vigorous cross-examination and appropriate jury instructions.

## IV. CONCLUSION

Accordingly, Defendant Eric Lang's Motion to Suppress Pretrial Identification (Doc. 58) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Susan J. Dlott
United States District Court